UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DUDLEY L. DAVIS,

    Petitioner,

v.                                          CASE NO: 8:10-CV-2390-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, (hereinafter referred to as "Petitioner" or "Davis"), brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition and the Respondent's Response (Dkt. #16). Davis has not filed a Reply in spite of several extensions within which to do so. Upon review, the Court determines that the petition should be denied.

## BACKGROUND

Davis was charged in Hillsborough County, Florida, with two counts of robbery and one count of aggravated assault. He pled guilty, but reserved his right to appeal the state court's denial of his motions to suppress his statements following his arrest and the identification by the victim of the aggravated assault charge. The state court, after holding an evidentiary hearing and denying the motions to suppress, accepted Davis's guilty plea on

all charges and sentenced him to the negotiated plea of twelve years imprisonment with a ten year minimum mandatory prison term on the robbery charges. He was sentenced to five years on the aggravated assault count with all sentences running concurrently.

Davis appealed. The appellate court affirmed without written opinion. *Davis v. State*, 14 So.3d 1011 (Fla. 2d DCA 2009) [table]. Davis did not seek further relief on appeal, nor has he sought post-conviction relief. Respondent agrees that the petition is timely. Because the state court held an evidentiary hearing on the motions to suppress and this Court has the benefit of that record, no evidentiary hearing is necessary here.

The petition raises three grounds for relief:

(1) Petitioner was arrested without benefit of a warrant or probable cause in violation of the Fourth Amendment,

(2) the denial of Petitioner's motion to suppress his identification in the aggravated assault charge violated Petitioner's rights under the Fourteenth Amendment, and

(3) the denial of Petitioner's motion to suppress all evidence and statements gathered after his illegal arrest was a violation of his rights under the Fourth and Fourteenth Amendments.

## **STANDARD OF REVIEW**

The petition is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") which became effective on April 24, 1996. In reviewing a petition for writ of habeas corpus under § 2254, a federal court is limited to determining whether a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In making that determination, a federal court does not sit as an appellate

court to rule upon evidentiary mistakes or the erroneous application of a state law unless necessary to correct a wrong of a constitutional magnitude. *Wainwright v. Goode*, 464 U.S. 78 (1983). A federal court cannot grant habeas relief unless a petitioner shows that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

## DISCUSSION

### Ground One

> Petitioner was arrested without benefit of a warrant or probable cause in violation of the Fourth Amendment.

In ground one, Davis attacks the validity of his arrest. He argues that law enforcement had no probable cause to arrest him, especially without a warrant. He claims that the arrest was in violation of his constitutional rights under the Fourth Amendment. But Fourth Amendment claims cannot be heard in a habeas corpus proceeding in federal court where a petitioner has received a full hearing of the matter in state court. *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the Supreme Court held that a state prisoner may not be granted federal habeas relief on Fourth Amendment search or seizure issues if he was given a full and fair opportunity to litigate the constitutional nature of those issues in state court. 428 U.S. at 494. Here, Davis received a full and fair opportunity to litigate his Fourth Amendment claims, he

just disagrees with the state court's factual findings and resulting decision. Since he received a full hearing in state court, ground one must be denied here. Even if this Court were not precluded from entertaining the issue, it would have failed on the merits.

Davis admits most of the underlying facts presented to the state court during the motion to suppress hearing. In May of 2004, someone carjacked William Anderson by use of a firearm. The carjacking took place a few hours after an attempted armed robbery of two female victims. The detectives investigating the cases put out a BOLO (be on look out) for Anderson's vehicle. About two months later on July 27, 2004, the vehicle was spotted parked in front of a duplex and placed under surveillance in the hopes that the person using the vehicle could be apprehended. After about 24 hours, when no one had returned to the vehicle, a detective interviewed a female who lived in the area and had been "paying a lot of attention" to the detective's interest in the vehicle. The female informed the detective that she had seen "Duke" driving the vehicle and pointed out where Duke lived.

The detective, along with other officers, walked to the unit pointed out by the witness and knocked on the door. One of the officers went to the rear of the unit in case Duke decided to flee out the back door. The door was answered by Catris Green, Duke's girlfriend, who acknowledged that Duke did in fact live with her. Ms. Green informed the detectives that "Duke's" name was Dudley Davis and allowed detectives to search the residence. Duke was not at home.

The officer positioned at the back door, looked inside an open trash can and observed a wallet that belonged to the victim of another robbery (Ricky Dean King). After observing

the wallet and learning that it belonged to another robbery victim, the officer reached into the trash can and discovered a set of car keys which were later identified as also belonging to robbery victim King. The detectives put out a BOLO for Dudley Davis.

A few days later, on July 30, 2004, the detectives overheard a call on their police radio that a person named Dudley Davis was involved in some sort of domestic disturbance outside a grocery store. Davis had fled the scene and officers were looking for him. The detectives went to the scene to aid in the search and arrived just as Davis was apprehended by a K-9 dog. Davis received several dog bites, but declined medical attention. Davis was arrested and taken to the police station.

The state court determined that the arrest under these factual circumstances was valid and did not violate Davis's Fourth Amendment rights. As stated above, this Court cannot entertain the issue of whether the arrest lacked probable cause since Davis received a full hearing on this matter in state court. *Peoples v. Campbell*, 377 F.3d 1208 (11th Cir. 2004). But even if it were to reach the issue, this Court would have determined that Davis' arrest was not in violation of his Fourth Amendment rights.

Ground one will be denied.

### Ground Two

The denial of Petitioner's motion to suppress his identification in the aggravated assault charge violated Petitioner's rights under the Fourteenth Amendment.

The victim of the aggravated assault picked Davis's photo out of a photo pack three days after she was assaulted. Davis filed a motion to suppress the identification which was

denied after an evidentiary hearing. Again, the underlying facts of this issue are not in dispute.

On July 27, 2004, Beth McNutt was the victim of an aggravated assault. She was standing in her driveway or garage when she saw a vehicle drive slowly past her home. Her home was for sale, and she thought the driver might be interested in purchasing it. She testified that she got a good look at the driver for about ten to fifteen seconds. She turned away momentarily, and when she looked back she saw someone walking toward her up the driveway wearing a black mask. She ran into the house and dialed 911. When the police arrived, the individual was gone, but she described him to the police officer as a light-skinned black male with a bald or a shaved head, with stubble on top. She did not describe any other identifying features.

Three days later, on July 30, 2004, the day of Davis's arrest, Ms. McNutt was shown a photo pack containing the pictures of six young adult black males. The photo pack contained an older photograph of Davis in which he had short, close-cropped hair. McNutt picked Davis from the photo pack.

At the motion to suppress hearing, Davis entered into evidence his booking photograph from July 30, 2004, which showed at that time he had hair two to three inches long, a mustache, and a short beard. Davis contends that the photo pack did not accurately depict how he appeared at the time of the crime, and argues "(i)t is very clear that Ms. McNutt misidentified the petitioner."

In his motion to suppress, Davis stated that "the photo analysis was unnecessarily suggestive and conducive to irreparable mistaken identification." Resp. Exhibit 1, V. 1, R. 199. Interestingly, that was not his argument at the hearing. He argued that his booking photograph from July 30, 2004, showing him to have a mustache and a beard undermined McNutt's credibility. The photopack was of six clean shaven black males. He does not claim that he was the only male that had short hair. Had his photo been the only one with short hair, or the only one with a mustache and a beard, then perhaps his conclusory statement about the suggestive nature of the photopack would have had some factual underpinnings. But here he makes no showing that the photopack was suggestive in nature or that the detective suggested a certain photograph, he only claims that McNutt was not credible.

Ms. McNutt testified at the suppression hearing and was confident in her identification of Davis. The state trial judge was impressed with her testimony:

> THE COURT: First of all, let me indicate that there is nothing contained in the record at this point in time which would convince this Court that this photopack was suggestive in nature.
>
> I am satisfied from listening to the witness' testimony that she was confident in the description that she gave to law enforcement; she was also confident in identifying the picture that was provided to her in the photopack. The motion to suppress the identification by the witness will be denied.

Record, V1, p. 78.

Ms. McNutt testified that the officer, in showing the photopack, made no suggestion to her concerning which photo to pick. Resp. Ex. 1, V1, p. 62. The state judge had the advantage of observing McNutt's demeanor and hearing her testimony first hand. His factual finding is entitled to deference by this Court unless Davis overcomes it by clear and convincing evidence that the finding involved an unreasonable determination of the facts. While Davis has certainly cast doubt on the validity of the identification, he has not shown that the state court had no evidence before it upon which to base its finding. Davis's argument is basically one of credibility – that McNutt's identification should not be believed. Davis had the right to make that credibility challenge to a jury, but chose not to do so.

Davis has not shown that the state court unreasonably applied federal law in determining that the process was not unduly suggestive. *See Neil v. Biggers*, 409 U.S. 188 (1972). In *Biggers*, the Supreme Court set forth several factors to consider in evaluating "the likelihood of misidentification," including:

(1) the opportunity of the witness to view the criminal at the time of the crime,

(2) the witness's degree of attention,

(3) the accuracy of the witness's prior description of the criminal,

(4) the level of certainty demonstrated by the witness at the confrontation, and

(5) the length of time between the crime and the confrontation.

Davis fails to show these factors were improperly applied or considered by the state court. Therefore, this Court is bound by the state court's findings of fact. Ground two will therefore be denied.

### Ground Three

> The denial of Petitioner's motion to suppress all evidence and statements gathered after his illegal arrest was a violation of his rights under the Fourth and Fourteenth Amendments.

In ground three, Davis again attacks the legality of his arrest. This portion of ground three was addressed in ground one and will not be repeated here. Davis also contends in ground three that the statements he made to police after his arrest were not voluntary. He says:

> On July 30, 2004, the Petitioner was arrested by a K-9 officer of the Hillsborough County Sheriff's Office. This arrest was effectuated by the actual K-9. The Petitioner was transported to the Temple Terrace Police Department and subsequently questioned. Once at the police department, detective David Turbeville (a later fired detective) tried to interview the Petitioner. The Petitioner immediately asked for a lawyer. Detective Turbeville testified, that he immediately stopped the interview. The Petitioner testified that the detective never stopped the interview, and continued to question, and threaten him, In the end, the Petitioner ultimately gave a video taped confession. Law enforcement also prepared a photopack of the Petitioner after his arrest. The photopack was then taken to victims, Beth McNutt, and Ricky King. Both making a identification of the Petitioner. Petitioner's pre-trial motion to suppress all evidence gathered, and statements, after the illegal arrest, should have been granted. All the evidence police used against the Petitioner, circumstantial, or physical, was gathered and obtained after the warrantless, and illegal arrest, violating Petitioner's 4th and 14th Constitutional Amendments.

Petition (Dkt. #1), p. 9-a.

Davis contends that his statements were not voluntary because the interviewing detective did not stop the interview after he asked for a lawyer. He also states that the detective threatened him. At the conclusion of the motion to suppress hearing, the state court denied his motion to suppress these statements. The state court heard Davis's testimony as well as that of three officers who were involved in taking his statement.

Included in the evidence at the hearing was Davis's signed written statement that he asked for a lawyer, but subsequently changed his mind and was willing to give a statement without a lawyer. That factual occurrence was supported by the video of his confession in which the officer made clear that Davis was willing to make a statement in spite of his earlier request for a lawyer, and Davis agreed.

The state court's finding that the confession was voluntary and not the subject of threats or coercion was well supported by the evidence. The state court's decision to deny the motion to suppress was a reasonable application of established Supreme Court precedent and a reasonable determination of the facts in light of the evidence. Therefore, ground three will be denied.

## **CONCLUSION**

For the reasons set forth above, all three grounds raised in the Petition are denied.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

It is further ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on December 29, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2010\10-cv-2390.deny 2254.wpd*